UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALLISON HOWARD | CIVIL ACTION |
| VERSUS | NO. 24-252 |
| TARGET CORPORATION OF MINNESOTA | SECTION M (2) |

### ORDER & REASONS

Before the Court is a motion *in limine* to exclude the testimony of plaintiff's liability expert Mitchell Wood filed by defendant Target Corporation of Minnesota ("Target").[1] Plaintiff Allison Howard responds in opposition.[2] Also before the Court is Target's motion for summary judgment,[3] which Howard opposes.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

### I. BACKGROUND

This case involves injuries caused by a falling sign at a retail store. Howard alleges that on March 27, 2023, she was shopping in a Target store when she was hit in the neck and upper back by an improperly attached metal and wooden sign that fell from the top shelf of the aisle she was shopping in.[5] Howard claims that she did not cause the sign to fall.[6] At her deposition, Howard testified that the accident occurred when her ex-husband, Isaiah Laborde, who was playing catch with her children, tossed a stuffed animal (specifically, the crab Sebastian from the *Little Mermaid*) in the air and it hit the sign, causing it to fall.[7] Laborde confirmed the same at his

---

[1] R. Doc. 32.
[2] R. Doc. 34.
[3] R. Doc. 29.
[4] R. Doc. 35.
[5] R. Doc. 1 at 1-2.
[6] *Id.* at 2.
[7] R. Doc. 29-4 at 2-3.

deposition.[8]  Nonetheless, Howard alleges that Target's negligence caused the accident, and she seeks various damages for her resulting injuries.[9]

II.  **LAW & ANALYSIS**

   **A. Target's Motion *In Limine* to Exclude Mitchell Wood's Testimony (R. Doc. 32)**

Howard hired Mitchell Wood as a liability expert to support her theory of the case.  Wood, who holds degrees in architecture and civil engineering, has been a licensed architect for 36 years and a licensed commercial general contractor and residential builder for more than 25 years.[10]  He owns an architectural design and planning firm that performs residential and commercial design services, building and safety code reviews, site inspections, and project management.[11]  He also owns a residential and commercial building business.[12]  Wood has been involved in commercial and retail building design projects, including designing safe walkways.[13]  He has been accepted as an expert witness by Louisiana federal and state courts in the fields of construction, inspection, project management, site safety, architecture and design, and building codes.[14]

Wood, after reading the complaint and Laborde's deposition, studying photographs of the accident scene and the sign, and examining the stuffed animal (which weighs 1.27 ounces), issued a report in which he opines "that the metal/wood sign was not anchored in or attached to the support bracket in a secure manner."[15]  Wood states that he deduced this opinion from the relatively light weight of the stuffed animal, which he says should not have been able to detach the heavier sign from the bracket.[16]  Wood further opines that Target knew, or should have known, of the unsafe

---

[8] R. Doc. 29-5 at 2-3.
[9] R. Doc. 1 at 2-3.
[10] R. Doc. 32-8 at 1.
[11] *Id*.
[12] *Id.*
[13] *Id.* at 1-2.
[14] *Id.* at 2.
[15] *Id*. at 2-3.
[16] *Id*. at 3.

manner in which the sign was attached to the overhead bracket.[17] And he states that "Target's failure to safely attach this metal/wood sign to the support bracket in question created a hazardous condition which resulted in an unreasonable risk of harm to its customers" that "could have been easily rectified by properly anchoring the metal/wood sign with a screw and/or bolt."[18] Finally, according to Wood, "[t]he hazardous condition and unreasonable risk of harm created by Target is a 'prima facie' cause [and cause-in-fact] of Ms. Howard's injuries."[19]

Target filed the instant motion *in limine*, arguing that Wood should be precluded from testifying for a myriad of reasons.[20] First, Target argues that, as an architect and general contractor, Wood is unqualified to render opinions in this matter because he does not have any experience or qualifications related to retail signage or falling merchandise claims, has never published on those subjects, and is not a retail safety expert.[21] Next, Target contends that Wood's opinions are unreliable because he did not inspect the sign, does not take into account Laborde's actions as a cause of the accident, and did not conduct a duty-risk analysis before concluding that Target was at fault.[22] Finally, Target argues that Wood's opinions that a dangerous condition existed and that Target knew, or should have known, about it should be excluded as improper legal conclusions that will not assist the jury.[23]

In opposition, Howard argues that Wood is qualified to render the opinions he states in his report because he has decades of experience as an architect and contractor, including experience working on the design and safety of commercial buildings.[24] Howard then recounts counsel's

---

[17] *Id.*
[18] *Id*.
[19] *Id.*
[20] R. Doc. 32-1 at 4.
[21] *Id.* at 4, 6-7.
[22] *Id.* at 4, 7-10.
[23] *Id.* at 4, 10-12.
[24] R. Doc. 34 at 1-2, 9.

3

efforts to arrange for Wood to inspect the property and blames Target for the lack of inspection.[25] Howard contends that Wood's opinions are relevant and reliable because he can testify as to the difference in the weight between the objects involved – a 1.27 ounce stuffed animal as compared to a 2.79 pound sign – and explain that the toy should not have been able to dislodge the sign if the sign was secured properly.[26]  Howard also argues that Wood can explain the cost-benefit analysis regarding Target's layout and alterative signage attachment systems.[27]  Finally, Howard argues that Wood's opinions would be helpful to the jury because most jurors are not familiar with "retail signage attachment systems and general pedestrian safety precautions in a retail store setting."[28]

   1. *Daubert* **standard**

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[25] *Id* at 2-6.
[26] *Id*. at 6.
[27] *Id.* at 9.
[28] *Id.*

>   (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

### 2. Analysis

Having weighed Wood's report and qualifications against the arguments presented, the Court finds that Wood's education and experience qualify him to render the opinions expressed regarding the relative weights of the objects involved in the incident and available alternative methods for anchoring the sign. Those opinions are relevant and reliable. However, Wood may not offer any opinions as to ultimate factual or legal conclusions, including whether Target knew, or should have known, there was an unsafe condition, whether Target created an unreasonable risk of harm, and what constitutes a *prima facie* cause or cause-in-fact of the accident and injuries. These matters are reserved for either the factfinder or the Court.

### B. Target's Motion for Summary Judgment (R. Doc. 29)

Target moves for summary judgment, arguing that it is not liable for the accident because it is undisputed that Laborde caused the sign to fall when he hit it with the toy.[29] In opposition, Howard argues that this issue is not undisputed, the sign should not have fallen when it was hit by the much lighter stuffed animal, and the jury must determine liability and comparative fault, thus rendering summary judgment inappropriate.[30]

Having considered the parties' memoranda, the record, and the applicable law, the Court finds that Howard has identified genuine disputes of material fact – particularly relating to what caused the sign to fall and comparative fault – citing and supplying sufficient supporting evidence to preclude summary judgment.

---

[29] R. Doc. 29.
[30] R. Doc. 35.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Target's motion *in limine* to exclude Wood's testimony (R. Doc. 32) is GRANTED as to precluding Wood from testifying as to ultimate factual and legal conclusions, including whether Target knew, or should have known, there was an unsafe condition, whether Target created an unreasonable risk of harm, and what was a *prima facie* cause or cause-in-fact of the accident and injuries. The motion is otherwise DENIED.

IT IS FURTHER ORDERED that Target's motion for summary judgment (R. Doc. 29) is DENIED.

New Orleans, Louisiana, this 31st day of October, 2024.

```
                                      _____
                                      BARRY W. ASHE
                                      UNITED STATES DISTRICT JUDGE
```